[Cite as *State v. Huber*, 2019-Ohio-1862.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                        :

     Plaintiff-Appellee,                     :

                                          **No. 18AP-668**

v.                                                          :          (C.P.C. No. 18CR-562)

Stefanie R. Huber,                             :                  (REGULAR CALENDAR)

     Defendant-Appellant.                  :

---

D E C I S I O N

Rendered on May 14, 2019

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie Swanson*, for appellee. **Argued:** *Valerie Swanson*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Ian J. Jones*, for appellant. **Argued:** *Ian J. Jones*.

---

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1}  Defendant-appellant, Stefanie R. Huber, appeals from a judgment of the Franklin County Court of Common Pleas convicting her of receiving stolen property in violation of R.C. 2913.51.  For the reasons that follow, we affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On January 3, 2018, Detective Jeffrey VanBuskirk of the Grove City Police Department received a telephone call from Morgan Kuhlwein, the office manager at Southwest Eyecare in Grove City ("Southwest"), who reported that a number of eyeglass frames, valued at $2,736, had been stolen from the store.  Kuhlwein had noticed the frames were missing, and she and the proprietor, Dr. Marc Hartig, viewed the surveillance tape and saw that a man, later identified as Ransom Havice, II, had pocketed the frames and left the store.

{¶ 3} VanBuskirk received an email from Southwest containing identifying information about the stolen frames as well as the surveillance video from the store. When VanBuskirk watched the surveillance video, he observed the suspect had a large "numeral two" tattooed on his neck. (Aug. 15, 2018 Tr. at 16.) VanBuskirk forwarded an electronic "crime alert" to other local law enforcement agencies and soon received word from police departments in Dublin, Columbus, and Westerville, Ohio identifying the suspect as Ransom Havice, II. (Aug. 15, 2018 Tr. at 17; State's Exs. A-1, A-2.) Other information received by VanBuskirk included a tip the stolen frames had turned up at the E-Z Cash Pawn Shop ("pawn shop") at 571 East Livingston Avenue in Columbus.

{¶ 4} VanBuskirk visited the pawn shop and spoke with employees. He compared the frames in the shop to the identifying information he received from Southwest and what he had observed in the Southwest surveillance video and determined the frames at the pawn shop were the same frames Havice had stolen from Southwest. He also viewed the surveillance video from the pawn shop. VanBuskirk testified he "watched video surveillance that they have at their store. I was able to view that and see Ransom and [appellant] at the business there selling stolen glasses. [Appellant] is the one that sold the glasses to the business." (Aug. 15, 2018 Tr. at 19-20.)

{¶ 5} After viewing the pawn shop video, VanBuskirk matched a screen shot from the video to Ohio Department of Motor Vehicles' photographs for Havice and appellant. He also "checked LEADs online which identified [appellant] as the one that sold the glass frames to the pawn shop." (Aug. 15, 2018 Tr. at 26-27.) VanBuskirk explained pawn shops are required to obtain identification from anyone who transacts business with the store and must enter that information into the LEADs database. VanBuskirk then filed a warrant for appellant's arrest. Appellant turned herself in to authorities on January 28, 2018.

{¶ 6} On February 2, 2018, a Franklin County Grand Jury indicted appellant on one count of receiving stolen property, in violation of R.C. 2913.51, a felony of the fifth degree. Appellant waived her right to a jury and elected a bench trial. The trial judge found appellant guilty of receiving stolen property and sentenced appellant to two years of community control under basic supervision with no fine or costs imposed. The trial court did order appellant to pay $80 in restitution to the pawn shop representing the price the pawn shop paid for the stolen eyeglass frames.

{¶ 7}   Appellant timely appealed to this court from the judgment of conviction and sentence.

## II.  ASSIGNMENTS OF ERROR

{¶ 8}   Appellant assigns the following as trial court error:

[1.]  Appellant's conviction for receiving stolen property was against the manifest weight of the evidence.

[2.]  The evidence was legally insufficient to support the conviction for receiving stolen property.

[3.]  The pawn shop video was not properly authenticated and should not have been allowed into evidence or considered for any other purpose.

## III.  LEGAL ANALYSIS

### A.  Appellant's Third Assignment of Error

{¶ 9}   Because our disposition of appellant's third assignment of error impacts our analysis of appellant's remaining assignments of error, we will consider it first.[1]  In appellant's third assignment of error, appellant contends the trial court abused its discretion when it admitted the pawn shop video because it was not properly authenticated. We disagree.

{¶ 10}  " '[T]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court.' " *State v. Robb*, 88 Ohio St.3d 59, 68 (2000), quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus.  "Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of evidence." *State v. Oteng*, 10th Dist. No. 14AP-466, 2015-Ohio-1231, ¶ 31, citing *State v. Jewett*, 10th Dist. No. 11AP-1028, 2013-Ohio-1246, ¶ 52, citing *State v. Martin*, 19 Ohio St.3d 122, 129 (1985).  " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.  When applying the "abuse of discretion" standard, an appellate court is not free to merely substitute its judgment for that of the trial court.' " *State v. McLaughlin*, 10th Dist. No. 09AP-836, 2010-Ohio-1228, ¶ 10, quoting *State v. Holloman*, 10th Dist. No. 06AP-01, 2007-Ohio-840, ¶ 29.  " 'Abuse of discretion' has been described as including a

---

[1] In its decision, the trial court referred to the pawn shop video, State's Exhibit B, as "[t]he main piece of evidence that the court has reviewed."  (Aug. 15, 2018 Tr. at 100.)

ruling that lacks a 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).

{¶ 11} At trial, VanBuskirk watched the pawn shop video as he testified. VanBuskirk testified the video shows Havice at the pawn shop counter with appellant seated atop the counter. According to VanBuskirk, the video shows Havice reaching into appellant's "purse" and taking out the stolen frames. (Aug. 15, 2018 Tr. at 20.) VanBuskirk concluded from his viewing of the videotape that appellant "actually sold the glasses to the pawn shop." (Aug. 15, 2018 Tr. at 20.) He then identified appellant as she sat in the courtroom as the woman depicted in the pawn shop video.

{¶ 12} Appellant's trial counsel objected to VanBuskirk's testimony regarding what he had seen on the pawn shop video. The court initially overruled the objection stating: "It's not hearsay." (Aug. 15, 2018 Tr. at 20.) The court also added: "I'll consider the objection, and I'll reserve the ruling on it provided there's authentication of the pawn shop video." (Aug. 15, 2018 Tr. at 20.)

{¶ 13} At the close of the case-in-chief of plaintiff-appellee, State of Ohio, appellee moved the trial court for admission of the pawn shop videotape. Appellant objected to the videotape, whereon the following exchange took place:

> [Appellant's Counsel]: Your Honor, the basis for the objection is lack of authentication that the video isn't reliable -- reliable in its particulars as to the date and time, as to that it depicts. There's been no evidence indicating the manner in which these videos are collected, the manner in which they're stored, the familiarity with the location or what it depicts.
>
> So on the basis of lack of authentication under Evidence Rules 901 and 902 as well as -- as well as relevance and hearsay, Your Honor, in terms of its depiction -- I'll withdraw the hearsay, Your Honor. But I rest as to those other grounds of Rules 901, 902 and 403 preclude the consideration of the video. Thank you.
>
> THE COURT: For the reasons I stated before, the Defendant's objection will be overruled. I think the arguments that you're making * * * go more to the reliability of it, the maintenance of the video.
>
> Defective VanBuskirk testified that this is the video that he received from the pawn shop, that it accurately depicts what he viewed at the time in the course of his investigation, how

> it's maintained, it is -- you know, it goes to the weight of the evidence that it's a true and accurate depiction.
>
> Detective VanBuskirk did say this is the video I received from the pawn shop that I viewed, so I think on those grounds, the video is a true and accurate copy as to what he viewed. So I will admit it and overrule the defense's objection.

(Aug. 15, 2018 Tr. at 58-59.)

{¶ 14} Evid.R. 901 states all evidence must be properly authenticated before it is admissible into evidence. *State v. Callender*, 10th Dist. No. 15AP-15, 2015-Ohio-4255, ¶ 32. Photographic exhibits such as videotapes are properly authenticated when there is evidence "sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). The requirement of authentication is satisfied when a proponent presents foundational evidence or testimony from which a rational trier of fact may determine the evidence is what its proponent claims it to be. *Id.*, citing *State v. Farrah*, 10th Dist. No. 01AP-968 (Apr. 18, 2002).

{¶ 15} " 'The proponent need not offer conclusive evidence [but] as a foundation must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the [trier of fact].' " *Callender* at ¶ 32, quoting *State v. Caldwell*, 9th Dist. No. 14720 (Dec. 4, 1991). In the case of photographs or videotapes, it is not necessary to show who took the photograph or video or when it was taken, provided there is testimony the photograph or video is a fair and accurate representation of what it represents. *Farrah* at ¶ 39, citing *Andrews v. Riser Foods, Inc.*, 8th Dist. No. 71658 (Oct. 16, 1997), citing *State v. Brooks*, 101 Ohio App.3d 260, 264 (2d Dist.1995).

{¶ 16} In *Farrah*, witnesses testified they were present when defendant robbed a convenience store and flashed what appeared to be a pistol. During the trial, an officer was shown, over defendant's objection, store surveillance video taken during the robbery and verified that it accurately depicted the crime scene. During the playing of the video, the officer testified he had been to the store "[a] couple of times" prior to the day he viewed the video, that the video accurately portrayed the store as it looked on the night in question, and that the store counter was in the same place it always had been. *Id.* at ¶ 44. In rejecting defendant's argument the trial court abused its discretion when it admitted the unauthenticated videotape into evidence, this court concluded "the testimony presented

was sufficient to support a finding that the videotape was genuine, and accurately depicted the store at the time of the robbery." *Id.* at ¶ 51.

{¶ 17} In *State v. Freeze*, 12th Dist. No. CA2011-11-209, 2012-Ohio-5840, a series of robberies were committed in two communities. *Id.* at ¶ 2. As part of their investigation, officers reviewed surveillance videos of the establishments and at least one nearby business. *Id.* at ¶ 6, 16, 20. The surveillance video in question depicted the road and alley outside the store that had been robbed. The video showed a car matching the defendant's drive by the store on the morning of the robbery and later drive by and park behind a dumpster. *Id.* at ¶ 20, 70. The state played the surveillance videos at trial over defendant's objections, relying on the testimony of the investigating officer to authenticate the video footage. The court held the video was properly authenticated and admitted the videotape into evidence. Defendant appealed his conviction.

{¶ 18} In holding the trial court did not abuse its discretion in admitting the videotape, the court of appeals noted the officer testified that the time and date stamp on the video matched the time of the robbery in question. *Id.* at ¶ 70. The officer testified, as part of his investigation, he viewed and obtained a copy of the video from a neighboring business. The officer confirmed the video was "accurate representations of what he originally viewed." *Id.* While viewing the video, the officer was able to identify the location of the video camera, the store that had been robbed, and the neighboring business. *Id.*

{¶ 19} The foundational testimony presented in this case is similar to the testimony presented in *Farrah* and *Freeze*. Here, VanBuskirk testified State's Exhibit B was the same videotape he viewed when he visited the pawn shop during his investigation of the crime. VanBuskirk noted the videotape had a time and date counter indicating the video was shot on January 3, 2018 at approximately 2:30 p.m. He testified he viewed the video during his visit to the pawn shop on the pawn shop's equipment shortly after the crime had taken place. He testified the video showed multiple camera views inside the pawn shop, including two different angles showing the front door and another angle showing the counter and cash register. The prosecutor showed VanBuskirk portions of the video shot from each angle, and VanBuskirk testified he recognized the pawn shop as the location depicted on the screen.

{¶ 20} In our opinion, the foundational testimony presented by appellee was sufficient for the trial court, as the trier of fact, to make a finding the pawn shop videotape

admitted into evidence as State's Exhibit B was the same videotape VanBuskirk viewed at the pawn shop during his investigation, and the videotape accurately portrayed the events that occurred at the pawn shop on January 3, 2018. *Farrah*; *Freeze*. *See also State v. Hoffmeyer*, 9th Dist. No. 27065, 2014-Ohio-3578 (concluding trial court did not abuse its discretion by admitting video surveillance footage when investigating officers testified the video accurately portrayed the location on the night in question). Moreover, during appellant's trial testimony, she did not deny she is the person seen with Havice in the pawn shop video the prosecutor played for the trial court during VanBuskirk's testimony. Rather, appellant attempted to explain her conduct, as seen in the video, was the product of mistake and/or duress.

{¶ 21} For the foregoing reasons, we hold the trial court did not abuse its discretion when it admitted the videotape into evidence. Accordingly, appellant's third assignment of error is overruled.

## B. Appellant's Second Assignment of Error

{¶ 22} In appellant's second assignment of error, appellant contends her conviction was not supported by sufficient evidence. We disagree.

{¶ 23} "Sufficiency of the evidence is a legal standard that tests whether the evidence is legally adequate to support a verdict." *State v. Kurtz*, 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law, not fact. *Id.* "In determining whether the evidence is legally sufficient to support a conviction, ' "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." ' " *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 24, quoting *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "A verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Patterson*, 10th Dist. No. 15AP-1117, 2016-Ohio-7130, ¶ 32, citing *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001).

{¶ 24} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence

supports the conviction." *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80 (evaluation of witness credibility not proper on review for sufficiency of evidence); *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4 ("[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime."). "Further, 'the testimony of one witness, if believed by the [trier of fact], is enough to support a conviction.' " *Patterson* at ¶ 33, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42. *See also State v. Clark*, 10th Dist. No. 15AP-926, 2016-Ohio-5493, ¶ 25.

{¶ 25} R.C. 2913.51 defines the offense of receiving stolen property, in relevant part, as follows:

> (A)  No person shall receive, retain, or dispose of property of another *knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.*
>
> * * *
>
> (C)  Whoever violates this section is guilty of receiving stolen property. * * * If the value of the property involved is one thousand dollars or more and is less than seven thousand five hundred dollars, * * *receiving stolen property is a felony of the fifth degree.

(Emphasis added.)

{¶ 26} The testimony of appellee's witnesses, if believed, is undoubtedly sufficient to sustain appellant's conviction of receiving stolen property. VanBuskirk's testimony and the pawn shop surveillance video support a finding, beyond a reasonable doubt, that appellant knew or had reasonable cause to believe the eyeglass frames she and Havice sold to the pawn shop were obtained by Havice through the commission of a theft offense. In ruling on appellant's Crim.R. 29 motion for acquittal, the trial court made the following observations:

> In looking at the totality of the evidence before the Court, you know, it's -- at this stage, there's testimony that there were seven eyeglasses stolen from for Southwest Eyecare on January 3rd, 2018. Approximately, three to four hours later, they were pawned at a shop. There's evidence through State's Exhibit B that the [appellant] was present when that was there. There were seven pairs of eyeglasses removed from the

> [appellant's] bag.  The fact that seven pairs of eyeglasses were being pawned in a single transaction, I think at least it creates somewhat of an inference that, you know, that the [appellant] reasonably could have known that they were stolen.  And so in view of the totality of the circumstances, the time lapse between the theft and the pawning of the items, the relationship between the [appellant] and [Havice] who sold the items or who brought in the items to the pawn shop, we're talking about a three-hour time gap.
>
> I do believe the State has met a prima facie case on each and every element of the indictment, and, therefore, the motion for acquittal pursuant to Rule 29 will be overruled at this time.

(Aug. 15, 2018 Tr. at 67-68.)

{¶ 27}  We agree with the trial court that VanBuskirk's testimony, if believed, when combined with the pawn shop video, is sufficient to support a finding of guilt beyond a reasonable doubt as to all elements of the offense of receiving stolen property under R.C. 2913.51(A) and (C).  We note appellee also presented Kuhlwein's testimony in order to corroborate VanBuskirk's identification of the eyeglass frames stolen by Havice and their value.  Moreover, as earlier stated, appellant does not deny she was the person shown in the pawn shop video helping Havice remove the bag containing the stolen eyeglass frames from her purse.  Nor does she deny she handed her driver's license over to the pawn shop owner when requested, and her identifying information appears on the pawn shop receipt admitted into evidence in this case.

{¶ 28}  Appellant's argument the evidence was insufficient to sustain her conviction because her own testimony was more believable than that of appellee's witnesses is an argument we will consider in connection with appellant's challenge to her conviction as being against the manifest weight of the evidence.  *State v. Harris*, 10th Dist. No. 17AP-350, 2018-Ohio-3872, ¶ 27 ("[B]ecause appellant's sufficiency of the evidence argument is based solely on witness credibility, this court will address the argument in our analysis of the manifest weight of the evidence.").

{¶ 29}  For the foregoing reasons, we hold appellant's conviction of receiving stolen property is supported by sufficient evidence.  Accordingly, appellant's second assignment of error is overruled.

**C. Appellant's First Assignment of Error**

{¶ 30} In appellant's first assignment of error, appellant argues her conviction of receiving stolen property is against the manifest weight of the evidence. We disagree.

{¶ 31} "When presented with a manifest-weight challenge, an appellate court may not merely substitute its view for that of the trier of fact but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Patterson*, 2016-Ohio-7130, at ¶ 34, citing *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most ' "exceptional case in which the evidence weighs heavily against the conviction." ' " *Patterson* at ¶ 34, quoting *Thompkins* at 387, quoting *Martin* at 175.

{¶ 32} In conducting a manifest weight of the evidence review, we may consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting such review, "we are guided by the presumption that the [trier of fact], or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.*, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). "Accordingly, we afford great deference to the [trier of fact's] determination of witness credibility." *State v. Albert*, 10th Dist. No 14AP-30, 2015-Ohio-249, ¶ 14. "Mere disagreement over the credibility of witnesses is not a sufficient reason to reverse a judgment on manifest weight grounds." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 25, *appeal not allowed*, 140 Ohio St.3d 1455, 2014-Ohio-4414, citing *State v. G.G.*, 10th Dist. No. 12AP-188, 2012-Ohio-5902, ¶ 7.

{¶ 33} Appellant took the stand and testified in her own defense. Appellant testified she first met Havice roughly two years prior to the incident at the pawn shop. She testified Havice contacted her via Facebook just prior to Christmas 2017 claiming he was hungry and had nowhere to stay. Appellant told Havice he could come to her father's house where she was currently living to get something to eat and stay the night.

{¶ 34} Havice ended up staying at appellant's father's house with appellant for the next several days, but appellant insisted they were not in a romantic relationship. Appellant

testified that on January 3, 2018, appellant asked to borrow her car, but she refused because she knew appellant did not have a license. According to appellant, Havice became angry because appellant refused to lend him her vehicle and had refused to be his girlfriend. Appellant testified Havice pointed a sawed-off shotgun at her and then began choking her, before throwing her to the sofa.

{¶ 35} Appellant then relented and drove Havice to the pawn shop where Havice was to meet a friend to sell some tropical fish tank filters. Appellant explained when they entered the pawn shop, she was unaware Havice had placed a drawstring "Crown Royal bag" in her purse. (Aug. 15, 2018 Tr. at 76.) Appellant maintains she had no knowledge the bag was in her purse until Havice asked her to retrieve the bag after they reached the pawn shop counter. Appellant acknowledged she had previously seen Havice with this bag, but she believed the bag contained Havice's reading glasses, sunglasses, and tobacco fixings. She insisted she had no knowledge the bag contained seven stolen eyeglass frames. Appellant testified after she handed the bag to Havice, she gave her identification to the pawn shop owner because Havice had no license.

{¶ 36} Appellant's trial counsel argued in closing that appellant went to the pawn shop only after Havice had threatened her, appellant had no knowledge Havice intended to sell anything other than tropical fish tank filters, and she had no knowledge the bag Havice had put in her purse contained stolen eyeglass frames. Trial counsel argued the pawn shop video corroborated appellant's defense. The trial court responded as follows:

> THE COURT: Part of the reason I wanted to review Exhibit B is because [appellant's] testimony was that the morning that this happened, she was choked by Mr. Havice; she had a shotgun thrown in her face. She basically went to the pawn shop with him under duress or under the threat of harm, but in my view of the video, she's just kind of lollygagging along. This doesn't look like a person who was beaten. This doesn't look like a person who was just threatened with a gun and who was beaten up. * * * I have questions about her testimony * * * because the actions on the video don't conform with what her testimony was, and that's going to be a credibility determination that I'm going to have to make.

(Aug. 15, 2018 Tr. at 95.)

{¶ 37} In announcing the guilty verdict, the trial court concluded the pawn shop video failed to corroborate appellant's claims she was under duress, and she was unaware

Havice intended to sell stolen eyeglass frames. Though the trial court agreed with appellant's trial counsel that victims of domestic violence do not always show signs of stress, the trial court noted appellant appeared on the video to be "acting pretty nonchalant." (Aug. 15, 2018 Tr. at 102.) The trial court also noted appellant can be seen on the video "sitting on a countertop, opening her purse up to Mr. Havice." (Aug. 15, 2018 Tr. at 101.) Though appellant claimed she was not able to determine what was in the Crown Royal bag, the court observed the Crown Royal bag was actually a "clear plastic bag." (Aug. 15, 2018 Tr. at 102.) The trial court stated: "The video certainly gives the Court the impression, and the Court can make the inference that the [appellant] acted as a co-conspirator and was complicit in the [appellant]'s selling of the stolen goods." (Aug. 15, 2018 Tr. at 102.) The trial court found "[Appellant]'s testimony is completely unbelievable." (Aug. 15, 2018 Tr. at 101.)

{¶ 38} As we have noted, in conducting a manifest weight review, we presume the trial court, in a bench trial, is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. We must therefore afford great deference to the trial court's determination of witness credibility in this case. Nevertheless, because the trial court's credibility determination is based largely on the pawn shop video, this court has reviewed the video, and we cannot say this is an exceptional case in which the evidence weighs heavily against the conviction.

{¶ 39} Furthermore, on review of all the evidence admitted at trial, we cannot say the trial court lost its way and created a manifest injustice in finding appellant guilty of receiving stolen property, the value of which exceeded $1,000. Accordingly, we hold appellant's conviction is not against the manifest weight of the evidence. Appellant's first assignment of error is overruled.

## IV. CONCLUSION

{¶ 40} Having overruled appellant's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

_____