[Cite as *State v. Hoyle*, 2023-Ohio-899.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                      :

      Plaintiff-Appellee,              :              No. 22AP-19
                                    (C.P.C. No. 19CR-5712)

v.                                                 :

                                       (REGULAR CALENDAR)

Michael R. Hoyle, II,                              :

      Defendant-Appellant.            :

---

D E C I S I O N

Rendered on March 21, 2023

---

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Seth L. Gilbert* for appellee.

**On brief:** *Lisa M. Tome* for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, P.J.

{¶ 1} Defendant-appellant, Michael R. Hoyle, II ("Hoyle II" or "appellant"), appeals from a December 13, 2021 judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of one count of cruelty to a companion animal, a fifth-degree felony, with a three-year firearms specification, and a trial court verdict finding him guilty of one count of having weapons under disability ("WUD"), a third-degree felony. (Dec. 13, 2021 Jgmt. Entry.) For the reasons that follow, we affirm the judgment of the trial court.

## I. Facts and Procedural History

{¶ 2} On November 4, 2019, appellant was indicted on one count of cruelty to a companion animal, a fifth-degree felony in violation of R.C. 2941.145(A) with a three-year firearms specification, and one count of having WUD, a third-degree felony in violation of

No. 22AP-19

R.C. 2923.13. Appellant's father, Michael Hoyle, Sr. ("Hoyle"), was indicted as a co-defendant on two counts of felonious assault, both second-degree felonies. The indictments arose out of an incident which occurred on October 3, 2019 when Leo-Ali Peoples and his son Maalik-Ali Peoples were hit with a motor vehicle and Leo's dog was shot outside of Plugs Barbershop, located near the intersection of Chatterton Road and Noe-Bixby Road in Franklin County, Ohio.

{¶ 3} Appellant and Hoyle were tried together, with appellant waiving jury on the WUD count. On August 16, 2021, trial commenced. At the conclusion of the trial, the jury found appellant and Hoyle guilty of the counts brought against each of them and the trial court found appellant guilty of the WUD count. We take notice that this court previously affirmed the convictions of Hoyle in *State v. Hoyle,* 10th Dist. No. 21AP-610, 2022-Ohio-3065. We reiterate the evidence adduced at trial as set forth in *Hoyle* and incorporate it herein as follows:

> Leo testified he was married to Clarissa Peoples until 2016, and he and Clarissa have four children. Maalik is Leo and Clarissa's oldest son, Hoyle is Clarissa's brother, and Hoyle II is Hoyle's son. Additionally, Leo is the owner of Plugs Barbershop on East Chatterton Road, and he has a dog who stays at the barbershop.
>
> Pursuant to Leo's testimony, on October 3, 2019 he was working at the barbershop when Hoyle and Hoyle II appeared in the parking lot of a Speedway gas station outside the barbershop along with several other men, some of whom were holding guns. Leo said Hoyle got out of his vehicle and walked to the barbershop parking lot, yelling "[m]e and you." (Tr. Vol. 2 at 273.) At that point, Leo said that Maalik went outside with some customers to try to stop the altercation. When the dog went outside, Leo said someone sprayed the dog with mace. He said the dog then chased Hoyle causing Hoyle to go back to his vehicle, a gray-silver Dodge Dakota pickup truck. Once Hoyle was back in his vehicle, Leo said Hoyle drove straight at him, coming over the parking lot barrier at a high rate of speed, and hit Leo twice with the truck. First, Leo said Hoyle hit his left arm and left side of his body. Leo said Hoyle then put the truck in reverse and then drove forward once more, hitting Leo in the ankle with enough force to break Leo's leg brace. Further, Leo said the second hit from the vehicle also caused a burn-like injury to his leg, causing his flesh to peel off and his leg to bleed.
>
> Leo testified that when Maalik saw him on the ground after being hit the first time, Maalik ran over to him to help him. Leo

said that Hoyle then drove the truck at Maalik and either hit or almost hit him. After he was able to get up off the ground, Leo said he then saw Hoyle II walk toward him with a gun. Leo testified that Hoyle II walked directly to the dog and shot her three times. Once the gun was fired, Leo said everyone scattered and that Hoyle II jumped in the truck with Hoyle and the two drove off. Maalik picked up the dog and drove her to a veterinarian, and the police arrived a short time later. Leo said he went to an urgent care after being hit by the car where he was given Ibuprofen 800 for the pain. Additionally, Leo said he had to buy a new leg brace.

Leo testified he and Hoyle had been in a past altercation leading to Leo being charged with and convicted of aggravated menacing. Because of his history with Hoyle, Leo said he got his phone out on October 3, 2019 to record the incident. The state played several video clips for the jury, and Leo described the scenes as he remembered them. The first clip showed a small crowd of people outside the barbershop, including Hoyle. The second clip showed the Dodge Dakota truck and showed Hoyle II before the camera begins to point at either the sky or ground. Leo testified that after he was hit with the truck, he dropped the phone that was recording and that someone else picked it up and took it into the barbershop where the phone continued to record audio despite an obstructed video view. Leo described another video clip as containing audio of the three gunshots, the dog screaming, and tires screeching.

Maalik, who was 22 years old at the time of trial, also testified. On October 3, 2019, Maalik said he went to his maternal grandfather's home to use the bathroom and say hello to his mother and grandfather. When he exited the bathroom, Maalik said Hoyle began yelling at him and getting in his face. Maalik testified he left his grandfather's house at that time and took his younger brother with him, and then he returned to the barbershop where he had been doing apprentice work for his father.

Describing the afternoon of October 3, 2019, Maalik said he did not notice Hoyle and Hoyle II until they started coming over closer to the barbershop. Maalik testified he was outside with his cousins and with the dog when he saw Hoyle across the street. Among the cars gathered across the street, Maalik said he also saw his maternal grandfather's truck and his maternal aunt's vehicle, and he testified that it appeared the cars were loaded with people.

Maalik testified that Hoyle instigated the altercation and that eight or nine people then showed up, some of whom had guns with them, outside the barbershop. Maalik described Hoyle's vehicle as a silver Dodge Ram pickup truck. As the people, including Hoyle II, crossed the street and came toward the barbershop parking lot, Maalik said they were arguing and yelling. Maalik testified that the dog then ran up to protect him and someone sprayed her with mace. Next, Maalik said the silver truck pulled into the barbershop parking lot at a high rate of speed, hit his father in the leg and knee the first time, and then ran over his father's foot with the brace on it the second time. Maalik testified that Hoyle was driving the truck. When Maalik ran over to help his father, Maalik said Hoyle then reversed the truck and hit Maalik with it as well. Maalik testified that although the truck hit him and caused him pain, he did not require any medical attention. Further, Maalik said his father was on the driver's side of the truck when it hit his father and that the vehicle's mirror broke when the truck hit his father. According to Maalik's testimony, after the truck hit them the second time, the men got out of the truck with their guns and tried to start a fight.

At that point, Maalik said Hoyle II walked across the street, put on a hooded sweatshirt, and walked up with a gun to Maalik, Leo, and the dog. Maalik testified that Hoyle II pointed the gun at him and his father before shooting the dog three or four times. Maalik said Hoyle II dropped the gun but then picked it up and ran off. After the gunshots, Maalik said he rushed the dog to the veterinarian.

Rodney Howell, a deputy with the Franklin County Sheriff's Department, also testified. Deputy Howell testified he responded to the barbershop on October 3, 2019 after reports of a shooting. Based on the casings and projectiles located at the scene, Deputy Howell said the incident involved a semi-automatic weapon. Deputy Howell stated there were individuals at the scene who refused medical help and, therefore, no medics were called to the scene.

Jeffrey Watkins, a witness who observed the incident, testified he saw someone pull out a pistol and then heard three gunshots. After the gun shots, Watkins said he saw two people run to a silver Dodge pickup truck and flee the scene. Watkins testified he followed the silver Dodge pickup truck in his own vehicle, called 911, and provided police with a location of the vehicle. Watkins followed the vehicle to James Road until police intervened.

No. 22AP-19

*Hoyle* at ¶ 3-12.

{¶ 4} In addition to Deputy Howell's testimony as set forth above, he also testified that while at the crime scene, he verified that the dog had been shot. In addition to Jeffrey Watkins' testimony as set forth above, he also testified that at the time he observed the incident, he observed a dog running around and staying close to its owner. After he heard the three gunshots as set forth above, he heard the dog yelp and saw a person go down and then pick up the dog. Watkins further testified that he did not see the dog acting aggressively or lunging at anyone.

{¶ 5} On August 20, 2021, the jury found appellant guilty of cruelty to a companion animal and the trial court found appellant guilty of having WUD. On December 13, 2021, the trial court issued a judgment entry which reflected the verdict of the jury and the court and imposed an aggregate prison sentence of four years, three of which are mandatory for the firearms specification. (Jgmt. Entry.)

{¶ 6} This timely appeal followed.

## II. Assignment of Error

{¶ 7} Appellant asserts the following as his sole assignment of error for our review:

> APPELLANT'S CONVICTIONS WERE AGAINST THE
> MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF
> HIS RIGHT TO DUE PROCESS AS GUARANTEED BY FIFTH
> AND FOURTEENTH AMENDMENTS TO THE UNITED
> STATES CONSTITUTION AND COMPARABLE PROVISIONS
> OF THE OHIO CONSTITUTION.

## III. Discussion

{¶ 8} Appellant asserts in his sole assignment of error that his convictions were against the manifest weight of the evidence. We disagree.

{¶ 9} "[T]he criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42

No. 22AP-19

(1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 10} Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, *7 (May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.* at ¶ 10 citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 38 (reversed and remanded in part on other grounds). Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 9. This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 10th Dist. No. 18AP-668, 2019-Ohio-1862, ¶ 32, quoting *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 11} In this case, appellant asserts, in essence, that his convictions are against the manifest weight of the evidence because the testimony of Leo and Maalik conflicted with each other's version of the events at issue. Yet the record shows that the testimony of Leo and Maalik was consistent with regard to the details crucial to the elements of the crimes for which appellant was convicted. Specifically, both Leo and Maalik testified that appellant shot Leo's dog at least three times, and identified appellant as the person who shot Leo's

dog. While Maalik testified that appellant shot the dog three or four times, and Leo testified that appellant shot the doge three times, this slight divergence in the details has no effect on the overall consistency of the two witnesses' testimony on this point. As we previously found in affirming the convictions of appellant's co-defendant in *Hoyle*, the inconsistencies between the testimony of Leo and Maalik pointed out by appellant "largely related to ancillary matters and did not, when viewed in context, undermine the credibility as a whole of either Leo's or Maalik's testimony." *Hoyle* at ¶ 20.[1]

{¶ 12} As for appellant's conviction for having WUD, we observe that none of appellant's arguments actually contest the evidence showing that appellant possessed a gun while under disability. Furthermore, our review of the evidence and the record shows that the trial court sitting as the factfinder on this issue could have readily concluded that appellant was guilty of the WUD violation.

{¶ 13} Therefore, having reviewed the record in its entirety, and in light of the evidence discussed above, we do not find the jury clearly lost its way in finding appellant guilty of cruelty to a companion animal in violation of R.C. 2941.145(A), and merely because it chose to find the state's witnesses credible does not mean appellant's conviction was against the manifest weight of the evidence. Likewise, the trial court did not clearly lose its way in finding appellant guilty of having WUD in violation of R.C. 2923.13, and this conviction is likewise not against the manifest weight of the evidence.

{¶ 14} Accordingly, based on the foregoing discussion, we overrule appellant's sole assignment of error.

IV. **Disposition**

{¶ 15} Based on all of the foregoing, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.

---

[1] We further note that the testimony of Deputy Howell and Jeffrey Watkins would have readily permitted the finder of fact to conclude that the dog had been shot.