[Cite as *State v. Stewart*, 2026-Ohio-2097.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 25AP-134 |
| | | (M.C. No. 2024 CRB 13003) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Samuel Stewart, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 4, 2026

**On brief:** *Zachary M. Klein*, City Attorney, *Dave Pelletier*, *Ryan M. Pelfrey*, and *Orly Ahroni*, for appellee. **Argued:** *Dave Pelletier*.

**On brief:** *Mitchell A. Williams*, Public Defender, and *George M. Schumann*, for appellant. **Argued:** *George M. Schumann*.

APPEAL from the Franklin County Municipal Court

JAMISON, J.

{¶ 1} Defendant-appellant, Samuel Stewart, appeals a judgment of the Franklin County Municipal Court finding him guilty, pursuant to a jury trial, of assault, in violation of R.C. 2903.12(A). For the following reasons, we affirm the judgment of the trial court.

I. **FACTS AND PROCEDURAL HISTORY**

{¶ 2} On August 6, 2024, Stewart was indicted on one count of domestic violence, in violation of R.C. 2919.25(A), and one count of assault, in violation of R.C. 2903.12(A). The domestic violence charge was later dismissed at the plaintiff-appellee State of Ohio's request. This matter came for trial before a jury beginning on October 28, 2024. The state's

only witness, Lieutenant Kevin Starrett from the Mifflin Township Police Department, testified first.  Starrett is the officer who first arrived at the scene of the offense.

{¶ 3}  In addition to Starrett's testimony, the state presented video evidence of the altercation captured by Circle K's security cameras that Starrett recorded through his body-worn camera, along with pictures of the victim's neck taken by Starrett.  In the videos, Stewart enters Circle K and approaches J.D., who is standing beside the cash register.  Shortly after approaching J.D., Stewart appears to lunge toward J.D.  J.D. then turns away from Stewart, and Stewart wraps his arms around J.D., appearing to attempt to grab something from J.D.'s hands.  The two stagger into the area behind the cash register, with Stewart partially releasing J.D. but continuing to grip her right wrist.  As they continue to struggle, the video shows Stewart taking a phone away from J.D.  Moments later, Stewart shoves J.D. into the stockroom by her neck.  J.D. staggers before Stewart pursues her into the stockroom.  Upon entering the stockroom, both parties exchange words.  Stewart then moves toward J.D. and appears to grab J.D. by the throat to push her backward.  J.D. then falls backward over a stack of red storage crates with Stewart's hand around her throat.  Stewart then steps forward and begins struggling with J.D. while she is on the ground.  The struggle shortly ends, and Stewart brings J.D. to her feet.  Both parties then get into the same car and leave Circle K.

{¶ 4}  Upon initial arrival at Circle K, Starrett was unable to locate or contact J.D.  Witnesses gave the police a license plate number of the suspect's car.  The police found that the plate number variation was registered with a car that matched the description of the car the parties got into before leaving Circle K.  Starrett identified the registered owners of the suspect's car and obtained their current address.  Upon the discovery,  Starrett showed Circle K employees the driver's license photos of the registered owners.  The employees confirmed that the individuals in the photos were the parties involved in the altercation in the store.

{¶ 5}  Upon confirmation, Starrett went to the address registered to the vehicle, where he found the female victim shown in the surveillance video, whom he identified as J.D.  He observed and photographed fresh scratches on both sides of J.D.'s neck. As Starett was about to leave, the male suspect arrived in the car in question.  The male suspect wore the same shirt as the one shown in the surveillance video.  Starrett identified and

subsequently arrested Stewart as the suspect.  At trial, Starrett confirmed Stewart as the person he had arrested.

{¶ 6}   Following Starrett's testimony, Stewart testified on his own behalf.  Stewart admitted that he and J.D. were the male and female shown on Circle K's surveillance video on the date of the offense.  He testified that on August 6, 2024, he let J.D. use his Dodge Challenger and agreed to fill the gas tank.  Stewart averred that she returned to the car with an empty tank.  As a result, he got in the car, and J.D. drove them both to Circle K to put gas in the car.  Once at Circle K, Stewart testified that both parties sat in the car at the gas pump for a couple of minutes because J.D. refused to pay to fill the tank.

{¶ 7}   Following the argument, Stewart testified that J.D. walked into Circle K with Stewart's car keys.  Stewart said he followed J.D. into the store to recover the keys.  Once inside the store, Stewart testified that he was solely concerned with grabbing his keys and had no intent to injure J.D.  He testified that J.D. would not give him his keys and she began to walk to the back of the store.  Upon doing so, he followed J.D. to retrieve the keys.

{¶ 8}   Upon attempting to recover his keys from J.D., Stewart testified that both parties tripped over a box and fell.  He averred that J.D. was holding his hair as she tripped over the box and pulled him down with her during the fall.  Stewart absolutely denied being aware that his conduct would result in any harm to J.D.  He testified that he did not put his hand on J.D.'s neck with the intent of pushing J.D. down.  Rather, he testified that his hand incidentally came into contact with the side of J.D.'s neck.

{¶ 9}   On cross-examination, Stewart conceded that at the time J.D. fell over the crates, her hands were at her sides, and his hand was around her neck.  Stewart testified that the couple got up, walked out of the store together, and got back into the Dodge Charger to head back to J.D.'s home, confirming they were the parties in the video.

{¶ 10}  On November 1, 2024, the jury returned a verdict finding Stewart guilty of assault on the single count.  The trial court imposed a $1,000 fine, along with additional costs, and suspended $450 in fines in exchange for 9 days of jail credit.  The court also ordered an 180-day jail sentence, with 9 days' of jail credit.  The court memorialized the conviction and sentence in a judgment entry filed on January 9, 2025.  Stewart timely appeals this verdict.

## II. ASSIGNMENT OF ERROR

{¶ 11} Stewart assigns the following as trial court error:

> The verdict of guilt as to assault is against the manifest weight
> of the evidence.

## III. STANDARD OF REVIEW

{¶ 12} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 1997-Ohio-52, ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Sitting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *State v. Jordan*, 2023-Ohio-3800, ¶ 17. However, the appellate court's authority to reverse on manifest-weight grounds " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at ¶ 25, quoting *Martin* at 175.

{¶ 13} " 'While the jury may take note of the inconsistencies and resolve or discount them accordingly, . . . such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.), quoting *State v. Nivens*, 1996 Ohio App. LEXIS 2245, *7 (10th Dist. May. 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 14} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 2005-Ohio-4249, ¶ 38 (10th Dist.) (reversed and remanded in part on other grounds). Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 2006-Ohio-2070, ¶ 19 (10th Dist.). This is so because " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the

credibility of the proffered testimony. ' " *State v. Huber*, 2019-Ohio-1862, ¶ 32 (10th Dist.), quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

## IV. LEGAL ANALYSIS

{¶ 15} In his sole assignment of error, Stewart asserts the jury's verdict of guilt as to assault is against the manifest weight of the evidence. Specifically, Stewart asserts that a finding that he knowingly caused or attempted to cause physical harm to J.D. was against the manifest weight of the evidence. He averred that when he acted to obtain his car keys from J.D., he was unaware that his conduct would probably result in J.D.'s physical harm, as required under R.C. 2901.22(B). R.C. 2903.13(A) provides, in part, that "[n]o person shall knowingly cause or attempt to cause physical harm to another." A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. R.C. 2901.22(B).

{¶ 16} As set forth above, under a manifest weight of the evidence analysis, although we can consider the credibility of the witnesses in conducting our review, "we are guided by the presumption that the jury . . . 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co.*, 10 Ohio St.3d at 80.

{¶ 17} In this case, the jury was entirely free to believe the testimony of Starett presented by the state. *See Gullick* at ¶ 11. Indeed, "the testimony of one witness, if believed by the jury, is enough to support a conviction." *State v. Hood*, 2015-Ohio-5373, ¶ 11 (10th Dist.), citing *State v. Strong*, 2011-Ohio-1024, ¶ 42 (10th Dist.). Moreover, "a prerequisite for any reversal on manifest-weight grounds is conflicting evidence." *State v. Tate*, 2014-Ohio-3667, ¶ 20 (the court of appeals erred in reversing a conviction based on manifest weight where evidence of the perpetrator's identity was overwhelming).

{¶ 18} Here, Stewart has not identified any real conflict in the evidence, nor does the record show any such conflict. The state's evidence, through Starrett's body-worn camera footage, established that Stewart and J.D. were the parties in the videos. It further established that Stewart had his hand on J.D.'s throat and pushed her backward, causing both parties to stumble over the crates. The jury was also presented with circumstantial evidence of J.D.'s actual harm in the form of photographs documenting fresh scratch marks

on J.D.'s neck. Stewart, by his own admission at trial, admitted to being the male individual in the surveillance video, and that his hand made contact with J.D.'s throat. Based on these admissions and the evidence presented at trial, the jury determined that it was probable that J.D. would suffer physical harm when appellant grabbed J.D. by the neck and pushed her to the ground. Despite Stewart's protest to the contrary, the jury was free to determine Stewart's mental state from the surrounding facts and circumstances, including the nature of the act.

{¶ 19} Thus, in conducting the limited weighing of the evidence permitted, we cannot say the jury clearly lost its way in finding Stewart guilty of assault beyond a reasonable doubt. The jury's decision did not create a manifest miscarriage of justice that his conviction on the charge of assault must be reversed and a new trial ordered. Based on the evidence presented, the jury reasonably concluded that appellant knowingly caused physical harm to J.D. Accordingly, we find that the manifest weight of the evidence supports Stewart's conviction.

{¶ 20} In sum, appellant has failed to demonstrate that the jury clearly lost its way and created such a manifest miscarriage of justice that his conviction on the charge of assault must be reversed and a new trial ordered. Accordingly, we overrule Stewart's sole assignment of error.

## V. CONCLUSION

{¶ 21} Having overruled Stewart's sole assignment of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BEATTY BLUNT and DINGUS, JJ., concur.

_____