[Cite as *State v. Edwards*, 2025-Ohio-112.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 23AP-546 |
| v. | : | (C.P.C. No. 22CR-3651) |
| Robert N. Edwards, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 16, 2025

**On brief:** [*Shayla D. Favor*], Prosecuting Attorney, and *Seth L. Gilbert*, for appellee. **Argued:** *Seth L. Gilbert*.

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*.

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, Robert N. Edwards, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of one count of aggravated murder and two counts of murder, all unclassified felonies, and one count of rape, a felony of the first degree. On August 10, 2023, the trial court issued a judgment entry which reflected the verdict of the jury and imposed an aggregate prison sentence of 45 years to life. (Aug. 10, 2023 Jgmt. Entry.) For the reasons that follow, we affirm the judgment of the trial court.

I. Facts and Procedural History

{¶ 2} On August 12, 2022, appellant was indicted in Franklin County on two counts of aggravated murder, in violation of R.C. 2903.01, and two counts of murder, in violation of R.C. 2903.02, all unclassified felonies, and one count of rape, in violation of R.C.

2907.02, a felony of the first degree. The indictment alleged that appellant had committed the offenses as part of a course of conduct involving Franklin and Licking Counties. Counts One and Two charged appellant with aggravated murder and murder, respectively, of Alma Lake, with the offenses occurring on or about June 3, 1991. Counts Three, Four and Five charge appellant with aggravated murder, murder, and rape, respectively, of Michelle Dawson, with the offenses occurring on or about November 7, 1996.

{¶ 3} A jury trial commenced on July 10, 2023. At trial, the following evidence was adduced.

{¶ 4} On June 3, 1991, the body of a woman subsequently identified as Alma Lake was found in a vacant lot in what was at the time a remote area of Urbancrest. The body was naked except for a pair of socks. The body had ligature marks on her wrists and ankles and a ligature wound around her neck. Other than the socks on the body investigators found no clothes related to the case in the area. The Franklin County Coroner took fingerprints and conducted an autopsy. The Columbus Police Department's ID Bureau was able to identify the fingerprints as belonging to Alma Lake.

{¶ 5} The autopsy report concluded that Lake's cause of death was ligature strangulation, and the manner of death was homicide. The autopsy report indicated that Lake had died within 48 hours of the autopsy. Lake's body had an internal injury of the bruising near the colon, indicating "blunt force" "came in through the anus and caused bruising in that area." (State's Ex. L, Autopsy 18.) Spermatozoa were present in Lake's anal and vaginal cavities. Swabs were taken from both cavities and sent to BCI for analysis. After an investigation, the Franklin County Sheriff's Office was unable to charge anyone, and the case became inactive.

{¶ 6} On November 7, 1996, the body of a woman subsequently identified as Michelle Dawson was found on a rural roadside near a residence on James Road south of Granville in Licking County.[1] The body was naked and had ligature marks around the wrists and ankles. At the scene, the coroner observed what appeared to be a laceration near the rectum.

---

[1] On appeal, Edwards is not challenging the State's proof of venue with respect to the counts relating to Michelle Dawson.

{¶ 7} The Franklin County Coroner conducted an autopsy. During the autopsy, Rod Mitchell, who at the time was a sergeant with the Licking County Sheriff's Office took fingerprints from the body. The fingerprints were identified through AFIS as belonging to Michelle Dawson. During Mitchell's investigation, he determined that Dawson was a prostitute and drug addict and had been diagnosed with schizophrenia. Dawson lived on the East side of Columbus and investigators found no connection between Dawson and Licking County.

{¶ 8} The autopsy report indicated that Dawson had died within 48 hours of the autopsy. The report showed the body had wrist bruises consistent with Dawson's wrists being tightly bound with a ligature. Her left ankle also had hemorrhaging consistent with being bound with a ligature. The body also had rectal tear consistent with an "object enter[ing] into this area that * * * was basically too large for the area to accept, * * * and it caused tearing there of her skin." (July 12, 2023 Tr. Vol. III at 129.) The autopsy report also showed the body had hemorrhages in the whites of the eyes and in the muscles on the left side of the neck consistent with strangulation.

{¶ 9} The autopsy report also indicated the body had "toxic to lethal levels of cocaine and ethyl benzoylecgonine," which is a metabolite of cocaine and alcohol. (Tr. Vol. III at 82-83; State's Ex. D, Autopsy 15.) The toxicology report indicated cocaine was detected at the "low end of the lethal administration level for cocaine that they find in bodies that that's the only cause of the patient's death." (Tr. Vol. III at 84, State's Ex. D.) Dr. Fardal further testified that the vasovagal response from the assault on Dawson's rectum could have contributed to her death. Ultimately, he concluded that the cause of death was a "combination of cocaine intoxication, neck compression and restraint." (Tr. Vol. III at 145; State's Ex. D, Autopsy 15.)

{¶ 10} DNA swabs were taken from Dawson's mouth, vagina, and rectum and forwarded for analysis. After an investigation, the Licking County Sheriff's Office was unable to charge anyone, and the case became inactive.

{¶ 11} As DNA technology evolved over the ensuing years, investigations involving the DNA samples taken from both Lake and Dawson continued. Erika Jiminez, a forensic scientist at BCI, testified that in 2003, it was determined that the DNA profile from Lake's

anal swab matched the DNA profile from Dawson's vaginal swab, and the two cold cases were then "linked via DNA." (July 13, 2023 Tr. Vol. IV at 70.)

{¶ 12} In 2021, Sergeant Mickey Casper of the Franklin County Sheriff's Office received an investigative tip from BCI that the Edwards' DNA was a possible match to the DNA from the swabs taken during Lake's autopsy in 1991. The tip arose because Edwards' sons had DNA taken as a result of being "involved in the corrections system," and their DNA had "similarities" to the DNA from the swabs taken from Lake. (Tr. Vol. III at 169.) After further investigation, it was determined that at the time of Lake's death in 1991, Edwards was living at 3337 Urban Hollow Court in Urbancrest, which is near the location Lake's body was discovered. (July 11, 2023 Tr. Vol. II at 56; State's Ex. L, Scene 44.)

{¶ 13} Former Licking County cold case detective Shenan Day investigated Edwards' background and discovered that in 1996 when Dawson's body was found, Edwards lived in Newark at 12 North Avenue and worked at an industrial-cleaning company called MPW which was located at 9711 Lancaster Road in Hebron. (Tr. Vol. IV at 19-21, 25, 29.) The location on James Road where Dawson's body was found is on the "common sense" route between Edwards' 1996 residence and MPW, and evidence showed that Edwards worked both on November 6 and November 7, 1996 (the day Dawson's body was discovered). (Tr. Vol. IV at 33-36; State's Ex. D, Scene 30, 32.)

{¶ 14} After Edwards became a suspect in 2021, Jiminez obtained DNA profiles from items acquired from a "trash pull" conducted by Sergeant Casper. The DNA from one of the items matched the DNA profile obtained from Lake's anal swab. (Tr. Vol. III at 177-83; Vol. IV at 77-80; State's Ex. DNA 3.) It was further determined that the swab obtained from Lake's vaginal cavity contained DNA from two unknown males, and the DNA profiles obtained from the trash pull were excluded as contributing to this mixture. (Tr. Vol. IV at 80-81; State's Ex. DNA 3.)

{¶ 15} Based on the DNA results from the trash pull, Casper asked Edwards to voluntarily come to the detective bureau to "have a conversation * * * about some incidents." (Tr. Vol. III at 183.) Edwards agreed to go, and at the end of the interview Casper served Edwards with a search warrant to obtain buccal swabs from the inside of Edwards' mouth.

{¶ 16} Jiminez then compared Edwards' DNA profile taken from the buccal swab against the DNA from Lake's anal and vaginal swabs. Edwards' DNA matched the DNA from the anal swab and was excluded as a contributor to the mixture from the vaginal swab. Edwards' DNA also matched the DNA from Dawson's vaginal swab. (Tr. Vol. IV at 83-84; State's Ex. DNA 5.) Jiminez testified that DNA from sperm lasts 72 to 96 hours in a vaginal cavity and about 24 hours in an anal cavity.

{¶ 17} On August 2, 2022, Edwards was arrested. A little over a week later, he made a telephone call from the jail to an unknown female who was apparently his daughter. In the phone call, Edwards denied any involvement in the deaths of either Lake or Dawson, stating that although he may have known Lake, her death and that of Dawson were the work of an unnamed serial killer.[2] (State's Ex. Jail Call, 17:10; Tr. Vol. III at 188.)

{¶ 18} On July 14, 2023, the jury found Edwards guilty of one count of aggravated murder, two counts of murder, and one count of rape. On August 9, 2023, the trial court conducted a sentencing hearing and Edwards was sentenced to 45 years to life in prison. (Aug. 10, 2023 Jgmt. Entry.)

{¶ 19} This timely appeal followed.

## II. Assignment of Error

{¶ 20} Appellant asserts the following as his sole assignment of error for our review:

THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF AGGRAVATED MURDER; MURDER; AND RAPE, AS THOSE VERICTS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WERE ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

## III. Discussion

{¶ 21} Appellant's sole assignment of error challenges the sufficiency and manifest weight of the evidence. He asserts that the evidence was insufficient to support his convictions for one count of aggravated murder, two counts of murder, and one count of

---

[2] Sam Little was a serial killer from California who confessed to committing murders in Ohio during the relevant time frame, but Little's DNA did not match any of the DNA profiles from either Lake's or Dawson's autopsies. (Tr. Vol. III at 201; Tr. Vol. IV at 87.)

rape, and that the verdict for those convictions is against the manifest weight of the evidence. We find no merit in appellant's assignment of error.

**{¶ 22}** "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court will not disturb the jury's verdict unless the court finds "that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484 (2001), citing *Jenks* at 273.

**{¶ 23}** In a review for sufficiency of the evidence, we do not engage in a determination of the credibility of the witnesses. *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16, citing *State v. Goff*, 82 Ohio St.3d 123, 139 (1998). Rather, "we essentially assume the state's witnesses testified truthfully and determine if that testimony satisfies each element of the crime." *Id.*, citing *State v. Gore*, 131 Ohio App.3d 197, 200-01 (7th Dist.1999). Furthermore, the testimony of one witness, if believed by the jury, is sufficient to support a conviction. *State v. Winston*, 10th Dist. No. 16AP-664, 2018-Ohio-2525, ¶ 21, citing *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

**{¶ 24}** Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that

the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). This discretionary authority " 'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *Martin* at 175.

{¶ 25} Furthermore, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Gullick*, 10th Dist. No. 13AP-317, 2014-Ohio-1642, ¶ 10, quoting *State v. Nivens*, 10th Dist. No. 95APA09-1236 1996 Ohio App. LEXIS, *7 (May 28, 1996). "A jury, as the finder of fact and the sole judge of the weight of the evidence and the credibility of the witnesses, may believe or disbelieve all, part, or none of a witness's testimony." *Id.*, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 26} A conviction is not against the manifest weight of the evidence simply because the jury believed the state's version of events over the appellant's version. *Gullick* at ¶ 11, citing *State v. Houston*, 10th Dist. No. 04AP-875, 2005-Ohio-4249, ¶ 38 (reversed and remanded in part on other grounds). Rather, a reviewing court must give great deference to the jury's determination of witness credibility. *Id.*, citing *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 19. This is so because the jury " ' "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." ' " *State v. Huber*, 10th Dist. No. 18AP-668, 2019-Ohio-1862, ¶ 32, quoting *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984).

{¶ 27} In this case, the evidence amply supports the jury's verdict of guilty for the murder of Lake, and guilty for the rape, murder, and aggravated murder of Dawson; neither was the verdict against the manifest weight of the evidence. Appellant's arguments notwithstanding, there was sufficient evidence to meet all of the elements of the crimes charged.

{¶ 28} With regard to Lake, in order to convict appellant of murder in violation of R.C. 2903.02(A), the state must prove he purposely caused Lake's death. The evidence showed the following.

{¶ 29} Lake's body was found naked (except for a pair of socks) in a then-remote area of Urbancrest near Edwards' residence at the time. Lake's autopsy, which was conducted on the same day her body was found, showed she died by ligature strangulation within 48 hours of the autopsy; Lake had various injuries in or near her anus, bruising inside the anus, and blood staining on her gluteal fold. Furthermore, the DNA evidence conclusively showed Edwards had engaged in anal sex with Lake within 24 hours of Lake's autopsy.

{¶ 30} Construing the foregoing evidence in a light most favorable to the state, a rational fact finder could conclude that appellant—and not someone else—purposely killed Lake. Thus, the evidence is sufficient to convict appellant of the murder of Alma Lake.

{¶ 31} With regard to Dawson, in order to convict appellant of aggravated murder in violation of R.C. 2903.01(B), the state must prove he purposely caused the victim's death "while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * rape * * *." The elements of murder, set forth above, are included in the elements of aggravated murder, and the trial court merged the murder count into the aggravated murder count. In order to convict appellant of rape in violation of R.C. 2907.02(A)(2), the state must prove he engaged in sexual conduct with another when he purposely compels the other person to submit by force or threat of force.

{¶ 32} The evidence showed the following. Dawson's body was found naked in a rural area south of Granville in Licking County between Edwards' residence and workplace at the time. The body had ligature marks around her wrists and ankles, and a laceration near her rectum. The autopsy showed Dawson had died within 48 hours of the autopsy, which was conducted the day after the body was found. Dawson had a bruise near her right eye that occurred within 18 hours of death, and hemorrhaging underneath her scalp on the back of her head that was inflicted at or near the time of death. The autopsy report showed Dawson's rectal injuries were also caused near the time of death and were consistent with being caused by a blunt object tearing her skin.

{¶ 33} Furthermore, the DNA evidence conclusively showed that only appellant's DNA was found on the vaginal swab taken during Dawson's autopsy—no other person's DNA was found. The evidence further showed that Dawson had petechial hemorrhages in her eyes and bruising in the strap muscles in her neck, both of which indicate she died of

strangulation. Although the toxicology report showed Dawson had the "low end" of lethal levels of cocaine and ethyl benzoylecgonine in her system, Dr. Fardal testified that the vasovagal response from the assault on Dawson's rectum could have contributed to her death.

{¶ 34} Construing the foregoing evidence in a light most favorable to the State, a rational fact finder could conclude that appellant raped Dawson vaginally and at least attempted to rape her anally, and purposely killed her via strangulation. Although appellant presents a theory that Dawson could have died of an accidental cocaine overdose, the circumstances surrounding the discovery of Dawson's body—she was found completely naked in a rural area with no clothing nearby nor any identification—are far more consistent with her death having been caused by a purposeful homicide rather than an accidental overdose. In short, the evidence is sufficient to convict appellant of the rape, murder, and aggravated murder of Dawson.

{¶ 35} Moreover, the evidence relating to the deaths of Lake and Dawson share so many common characteristics that they establish a modus operandi showing that appellant is the perpetrator in both deaths. Modus operandi is shown by evidence of " 'signature, fingerprint-like characteristics unique enough "to show that the crimes were committed by the same person." ' " *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, ¶ 119, quoting *State v. Hartman*, 161 Ohio St.3d 214, 2020-Ohio-4440, ¶ 37, quoting Weissenberger, *Federal Evidence*, Section 404.17 (7th Ed.2019). In this case, both women were found naked and left in locations near appellant's residences and/or workplace. Both women were bound with ligatures. Both women were strangled to death. And DNA evidence conclusively links appellant to sexual activity with both of the women. Given the overwhelming similarities surrounding the deaths of Lake and Dawson, a rational jury could readily have concluded that appellant is the perpetrator of all of the crimes of which he was convicted. In sum, the evidence is more than sufficient to support appellant's convictions.

{¶ 36} The manifest weight of the evidence also supports appellant's convictions. First and foremost, appellant has not identified any real conflict in the evidence, nor does the record evince any such conflicting evidence. "[A] prerequisite for any reversal on manifest-weight grounds is conflicting evidence, more specifically, evidence weighing

heavily against the conviction, such that the jury clearly lost its way and created such a manifest miscarriage of justice." (Internal quotations omitted.) *State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). There is no evidence weighing heavily against the convictions in this case.

{¶ 37} Furthermore, the evidence overwhelmingly supports the jury's verdict. Merely because the jury chose to find the state's witnesses credible and the DNA and other evidence convincing does not mean appellant's convictions are against the manifest weight of the evidence. Thus, the jury did not clearly lose its way in finding appellant guilty of the crimes charged.

{¶ 38} In essence, at trial, the defense presented a theory that on *two separate occasions* Edwards engaged in consensual sex with a woman and then *someone else* shortly thereafter strangled each woman and left her naked body in a location near either appellant's residence and/or workplace. Against the evidence presented by the state in this case, such a theory is so far-fetched as to be incredible. The evidence fully supported the jury's conclusion that the similarities in the circumstances surrounding Lake's and Dawson's deaths were not merely coincidences, but instead were the result of the same person committing all the indicted offenses—that person being appellant.

{¶ 39} Accordingly, based on the foregoing, appellant's sole assignment of error is overruled.

## IV. Disposition

{¶ 40} Having overruled appellant's sole assignment of error, the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

JAMISON, P.J. and MENTEL, J., concur.

———————————